# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00156-CV

Vincent Wrencher, Appellant

v.

Stephanie Wrencher, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-FM-03-006102, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Vincent Wrencher, appearing pro se, appeals from the trial court's order in a suit affecting the parent-child relationship. The trial court's order was issued in response to Vincent's motion to modify his divorce decree with his ex-wife, Stephanie Wrencher.[1] On appeal, Vincent argues that the trial court erred in ordering him to pay child support arrearage in the amount of $5,050.48. Because we hold that the trial court did not err in determining the appropriate amount of child support arrearage, we affirm the trial court's order.

---

[1] While Stephanie, also appearing pro se, did not file a brief on appeal, she did file a "Motion to Deny New Trial," presumably prompted by the fact that Vincent's notice of appeal was originally titled, "Motion for New Trial." In the interests of justice, we will consider Stephanie's motion as a brief on appeal. To the extent that Stephanie's motion requests interest on Vincent's child support arrearage, that request is denied. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."); *Pettus v. Pettus*, 237 S.W.3d 405, 422 (Tex. App.—Fort Worth 2007, pet. denied) ("Texas appellate courts have uniformly declined to afford relief to parties who have not filed a notice of appeal and make no showing of just cause.").

**BACKGROUND**

Vincent and Stephanie's decree of divorce was signed on August 18, 2004. Based on the limited record before us, it appears that on April 4, 2007, Vincent obtained a default judgment in a suit to modify the divorce decree.[2] Stephanie subsequently filed a motion to set aside the default judgment, which the trial court granted. The order on Stephanie's motion, issued May 28, 2007, provided that Vincent's child support payments would be suspended until a hearing could be held on his motion to modify, but that the suspension was not to exceed three months.[3] The motion to modify was set to be heard on August 13, 2007, but at that hearing, the trial court found that the parties had not attempted mediation prior to seeking modification as required by the divorce decree, and instructed them to do so before proceeding further. Another hearing on Vincent's motion to modify was held on February 25, 2008, and the trial court issued an order setting Vincent's child support obligations at $200 a month and finding him liable for child support arrearage in the amount of $5,050.48, to be paid monthly in installments of $120. The trial court calculated Vincent's arrearage by combining the arrearage at the time of the May 28, 2007 order suspending child support obligations, a sum of $2,187.28, with the amounts owed for the period from the end of the three-

---

[2] While the appendix to Vincent's brief contains a number of exhibits, we cannot consider those documents that were not properly made part of the record on appeal. *See Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied).

[3] While this order does not appear in the record, the trial court made a finding regarding its contents at the hearing on the motion at issue in the present case. The court stated, "Now, Judge Covington signed an order on May 28th of last year, '07, which stated that the parties had agreed . . . that no child support was to be paid until there was a hearing to resolve this matter. In no event would that exceed three months."

2

month suspension in September 2007 to the date of the hearing in February 2008, a sum of $2,863.20.[4]

Vincent now appeals the trial court's order on his motion to modify, arguing that the trial court erred in calculating his arrearage amounts. His arguments on appeal can be summarized in two issues: (1) that the calculation of his arrearage prior to the child support suspension was based on inaccurate information, and (2) that the suspension of his child support payments should have been extended beyond the three-month deadline.

## STANDARD OF REVIEW

We review issues regarding child support, "including confirmation of child support arrearages," under an abuse-of-discretion standard. *In re M.K.R.*, 216 S.W.3d 58, 61 (Tex. App.—Fort Worth 2007, no pet.). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial court's ruling. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.). Where, as here, no findings of fact or conclusions of law were requested or filed, it is implied that the trial court made all the findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

---

[4] The trial court stated on the record that the $2,863.20 amount was calculated by applying a monthly child support obligation of $477.20 to the six months between the end of the suspension in September 2007 to the hearing date in February 2008.

**DISCUSSION**

*Pre-Suspension Arrearage*

Vincent argues that the trial court erred in calculating the amount of his child-support arrearage as of the date his obligations were suspended in May 2007. According to Vincent, when the trial court asked the parties to calculate the total child support that had been paid during this period, he made an arithmetic error and incorrectly informed the court that he had paid $13,560.32, instead of the accurate amount of $14,291.48. At the hearing, the trial court stated, "[B]oth parties have agreed on the record that the amount that Mr. Wrencher has paid from July 6th, '04, to the present is $13,560.32." Vincent further argues that the Travis County Domestic Relations Office reports inaccurately reflected the amount of child support he had previously paid, and that the trial court's request to the parties to calculate the amount paid "did not account for the inaccuracies of the previous two Domestic Relation[s] Office Reports." Vincent asserts that payments totaling $1,561.53 were not included in the reports before the court.[5]

Regardless of whether the Domestic Relations Office reports accurately stated the amount of child support paid, the record reflects that the trial court relied on the parties, rather than the reports, to supply this information. Vincent concedes in his brief that the trial court "asked the parties to calculate child support paid since July 6, 2004," and the trial court made a finding that the parties agreed on the record that this amount was $13,560.32. Where stipulations are made in open court and entered of record, they are binding. *See* Tex. R. Civ. P. 11; *Yaklin v. Glusing, Sharpe*

_____

[5] It is unclear whether Vincent claims that this $1,561.53 should be added to the $14,291.48 amount that he would have reported to the court, if not for an arithmetic error on his part. Due to our disposition of this issue, we need not resolve the matter.

*& Krueger*, 875 S.W.2d 380, 385 (Tex. App.—Corpus Christi 1994, no writ). Furthermore, there is no indication that Vincent raised an issue regarding the accuracy of the calculation or otherwise objected to the trial court's order at the hearing. Given these facts, we hold that the trial court did not abuse its discretion in accepting the parties' agreed statement regarding the amount of child support paid prior to the suspension or by calculating the arrearage amounts accordingly.

*Post-Suspension Arrearage*

Vincent also argues that the trial court erred in assessing arrearage for the period from the end of the three-month suspension in September 2007 to the time of the hearing in February 2008. He raises equitable concerns, claiming that Stephanie intentionally delayed the proceedings during the six months from September 2007 to February 2008, and that therefore he should not be liable for child support during that time. While the suspension was to remain in place until the motion to modify was decided, for a period not to exceed three months, Vincent argues that the suspension should have continued after the three-month deadline, due to Stephanie's attempts to delay a decision on the motion.

While the record properly before us is limited, the trial court made the following findings at the February 2008 hearing on Vincent's motion:

> Now, Judge Covington signed an order on May 28th of last year, '07, which stated that the parties had agreed for no child support to be paid for three months until—well, no—that no child support was to be paid until there was a hearing to resolve this matter. In no event would that exceed three months. And she ordered y'all to have a hearing to set the trial on the merits as soon as possible. The Court finds that there had been a trial that had been set for July 16th, in which Ms. Wrencher asked for a continuance and one was granted by Judge Livingston. But there's been no order that's been provided. And it was reset for August the 13th, at which time—that still would have been within the three months of not having to pay

5

child support—at which time Judge Hart, upon hearing—or upon reading in the decree, Page 27, Paragraph 4, that the parties had to consult with a parent coordinator before seeking modification, and he found that y'all had not consulted with a parent coordinator and, therefore, he sent you away and continued the hearing until the parties complied. No—I find that nothing has happened since then in this case, I mean, as a setting, as a hearing. Y'all have not been before a judge since August of last year. And, therefore, I find, under Judge Covington's order, that child support is to be paid by Mr. Wrencher to Ms. Wrencher for the months of September, October, November, December, January, and February at the amount of $477.20, for a total—for that sum to be $2,863.20.

Vincent contends that the circumstances described by the trial court—the continuance and the parties' failure to attempt mediation before seeking modification—were due to Stephanie's attempts to delay resolution of this matter. He also argues that the trial court erred in "assuming that nothing was done between the two hearings," because, according to Vincent, he obtained a hearing date for December 10, 2007, which was later cancelled because Stephanie failed to complete certain pre-trial documents.

Our review of the record reveals that the trial court did not "assume[] that nothing was done between the two hearings," but rather found, correctly, that there had been no hearing on Vincent's motion to modify. While the court's docket sheet reflects a flurry of activity in this case between the May 28, 2007 order suspending child support and the February 25, 2008 hearing, there was no hearing on the motion to modify in that time period. Presumably, if there had been, the matter would have been resolved and the February 2008 hearing would not have been necessary.

Regardless of whether the delays in obtaining a hearing were the result of intentional stall tactics on Stephanie's part, as Vincent asserts, or simply the result of acrimonious litigation

6

between former spouses representing themselves pro se,[6] the trial court acted within its discretion in determining that the child support suspension was not to remain in effect beyond the three-month time period deemed necessary to resolve the matter. While Vincent appears to view the imposition of child support after the end of the suspension as some form of sanction against him for failing to obtain a hearing on his motion to modify, it is much more likely that the purpose of the three-month limit was to prevent the suspension from continuing indefinitely, which undoubtedly would not have been in the best interests of the child. *See Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991) ("It is a strong, long-standing policy of this state to protect the interests of its children, and this is the policy underlying the enforcement of child support obligations."). We hold that the trial court did not err in assessing arrearage for the time between the end of the three-month suspension in September 2007 and the hearing in February 2008.

## CONCLUSION

Because we hold that the trial court did not err in its assessment of Vincent's child-support arrearage, we affirm the trial court's order.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:  February 6, 2009

_____

[6]  While Stephanie was represented by counsel at certain stages of this litigation, the trial court's docket sheet reveals that her counsel withdrew on May 24, 2007. She appeared pro se at the February 2008 hearing and continues to do so on appeal.